UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 653,<br><br>Plaintiff,<br><br>v.<br><br>FRESH SEASONS MARKET, LLC and FRESH SEASONS MARKET VICTORIA, LLC,<br><br>Defendants. | Case No. 15-CV-3910 (PJS/TNL)<br><br><br><br>ORDER |

Timothy J. Louris, Roger A. Jensen, and Emily L. Marshall, MILLER O'BRIEN JENSEN, P.A., for plaintiff.

John J. Steffenhagen and Jason S. Raether, HELLMUTH & JOHNSON PLLC, for defendants.

Plaintiff United Food & Commercial Workers, Local 653 ("the Union") brings this action to compel defendants Fresh Seasons Market, LLC and Fresh Seasons Market Victoria, LLC (collectively "Fresh Seasons") to arbitrate a contractual grievance. This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, the Court grants the Union's motion, denies Fresh Seasons' motion, and orders Fresh Seasons to arbitrate the grievance.

I.  BACKGROUND

Defendant Fresh Seasons Market, LLC was established in 2005 and formerly operated a grocery store in Minnetonka, Minnesota.  Wartman Aff. ¶ 2.  Defendant Fresh Seasons Market Victoria, LLC was established in 2008 and formerly operated a grocery store in Victoria, Minnesota.  Wartman Aff. ¶ 3.  Thomas Wartman was the principal owner of Fresh Seasons.  Wartman Aff. ¶ 5.

Fresh Seasons belonged to the Minnesota Grocery Retailers ("the Retailers"), a multi-employer bargaining unit that bargained with the Union on behalf of its members.  Wartman Aff. ¶ 8.  After joining the Retailers, Fresh Seasons Market, LLC entered into a letter of agreement in which it agreed to be bound by the existing collective bargaining agreement ("CBA") between the Union and the Retailers.  Utecht Aff. ¶ 5 & Ex. A.  In March 2010, both of the Fresh Seasons entities signed on to a new CBA negotiated by the Union and the Retailers.  Wartman Aff. ¶ 6.  That CBA was set to expire on March 1, 2013.  Wartman Aff. ¶ 7.  In March 2013, the Union and members of the Retailers executed a one-year extension of the CBA.  Wartman Aff. ¶ 7 & Ex. B.

The Union and the Retailers began negotiating a new CBA in late 2013.  Wartman Aff. ¶ 11.  Wartman attended some of the bargaining sessions and received updates from the Retailers.  Wartman Aff. ¶ 11.  At a February 18, 2014 bargaining session, Wartman informed the Union that he could not continue providing the benefits

required under the CBA.  Wartman Aff. ¶ 12.  Wartman did not, however, inform the Union that Fresh Seasons intended to withdraw from the Retailers bargaining unit.  Utecht Aff. ¶¶ 12, 18, 20.  The Union and the Retailers reached agreement on a new CBA effective March 2, 2014.  Utecht Aff. ¶ 17.  Wartman was present at the Union's offices when the Retailers accepted the new CBA.  Utecht Aff. ¶ 16.  The Union's members (including those employed by Fresh Seasons) ratified the new CBA on March 2, 2014.  Utecht Aff. ¶ 17.  Wartman never signed that CBA, however.  Wartman Aff. ¶¶ 12, 15.

After March 1, 2014, Fresh Seasons discontinued the benefits and failed to implement the increased hourly wages required by the new CBA.  Wartman Aff. ¶ 14.  On April 21, 2014, Fresh Seasons notified the Union that it planned to close both stores.  Utecht Aff. ¶ 21.  The next day, the Union demanded that Wartman meet to negotiate the effects of the store closings on union employees.  Utecht Aff. ¶ 23.

Fresh Seasons issued its last paychecks to employees on May 9, 2014.  Wartman Aff. ¶ 17.  On several occasions, Fresh Seasons acknowledged that it still owed employees their accrued vacation and personal holiday pay.  Utecht Aff. ¶ 24; *see also* Compl. Ex. E[1] (May 9, 2014 email from Fresh Seasons stating that "this payroll only includes actual hours worked through May 5, 2014" but that "we have been and will

---

[1]Fresh Seasons did not object to the Union's reliance on exhibits attached to the complaint.

continue to work with the bank to release funds that will enable Fresh Seasons to pay at least some if not all of the accrued vacation hours"); Compl. Ex. F (June 12, 2014 email from Fresh Seasons stating that it currently lacked the money to pay accrued vacation or holidays but that it was hopeful that funds would become available).

The Union asked Fresh Seasons to provide an accounting of the amount of vacation and holiday pay owed to employees, and further notified Fresh Seasons that certain employees were claiming that they were owed additional wages. Compl. Ex. F. After receiving no response, the Union filed charges with the National Labor Relations Board, alleging that Fresh Seasons had refused to engage in bargaining over the effects of the store closure and had refused to provide information about unpaid vacation and holiday pay. Compl. Exs. G, H. In October 2014, the Union conditionally withdrew the charges after Fresh Seasons agreed to provide the requested information. Jensen Aff. ¶ 3 & Ex. B.

In January 2015, the Union learned that Wartman was raising money from investors to reopen the two stores. Utecht Aff. ¶ 25. In May 2015, both of the Fresh Seasons stores reopened. Utecht Aff. ¶ 26. Wartman worked in the stores, but he told the Union that he had no financial interest in the stores. Utecht Aff. ¶¶ 26-27. Having concluded that Wartman did not intend to fulfill his financial obligations to its members, the Union filed a formal grievance against Fresh Seasons on June 2, 2015.

Compl. Ex. J.  On June 11, 2015, the Union submitted a request for arbitration to the Bureau of Mediation Services.  Utecht Aff. ¶ 29.  After Fresh Seasons refused to participate in arbitration, the Union filed this action to compel Fresh Seasons to arbitrate the parties' dispute.

II.  ANALYSIS

Fresh Seasons resists arbitration on two grounds:  First, Fresh Seasons contends that this lawsuit is barred by the statute of limitations.  Second, Fresh Seasons contends that it is not a party to the March 2014 CBA and therefore cannot be compelled to arbitrate.  The Court considers each argument in turn.

*A. Statute of Limitations*

The Union filed this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to compel arbitration under the March 2014 CBA.  The parties agree that this lawsuit is subject to the six-month limitations period set forth in 29 U.S.C. § 160(b).  The parties dispute, however, when that six-month limitations period began to run.

An action to compel arbitration under § 185 generally accrues after a demand for arbitration is refused.  See *United Steel Workers Int'l Union v. Cont'l Tire N. Am.*, 568 F.3d 158, 162 (4th Cir. 2009); *Aluminum, Brick & Glassworkers Int'l Union Local 674 v. A.P. Green Refractories, Inc.*, 895 F.2d 1053, 1055 (5th Cir. 1990) (collecting cases).  This also appears to be the rule in the Eighth Circuit.  See *Bass v. City of Sioux Falls*, 232 F.3d 615,

617-18 (8th Cir. 1999) (noting the parties' agreement that a "cause of action to compel arbitration under a collective bargaining agreement accrues when one party clearly articulates its refusal to arbitrate the dispute" (citation and quotations omitted)).

The Union demanded arbitration on June 11, 2015.  Utecht Aff. ¶ 29.  Fresh Seasons sent the Union a letter contending that the grievance was not arbitrable on June 24, 2015.  Compl. Ex. L.  The Union filed this action to compel arbitration on October 21, 2015.  ECF No. 1.  This action appears to be timely, then, as the Union filed it within six months of Fresh Seasons' refusal to arbitrate.

Fresh Seasons acknowledges that the statute of limitations for an action to compel arbitration usually begins to run when a demand for arbitration is refused.  Fresh Seasons argues, however, that the general rule should apply only when the demand for arbitration was *timely* under the applicable CBA.  If the demand for arbitration was *untimely*, says Fresh Seasons, then the statute of limitations should begin to run on the last day on which a timely demand could have been made.  Fresh Seasons contends that the Union's demand to arbitrate was untimely, and thus the statute of limitations began to run not on the date on which Fresh Seasons rejected that (untimely) demand, but instead on the last date on which the Union could have made a timely demand—which, according to Fresh Seasons, was August 21, 2014.  Fresh Seasons

argues that this action is barred by the statute of limitations because it was not filed within six months of August 21, 2014.

The Court rejects Fresh Seasons' argument for two reasons:

First, if courts were to restrict the general rule in the manner advocated by Fresh Seasons, courts would become deeply involved in interpreting CBAs in order to determine the last date on which a timely demand for arbitration could have been made. Consider, for example, how Fresh Seasons arrives at its conclusion that the last date on which the Union could have timely demanded arbitration was August 21, 2014:

Under the CBA between the Union and the Retailers, grievances concerning nonpayment of wages, vacation pay, and holiday pay must be filed in writing within 90 days after the date of the alleged violation. Compl. Ex. A (hereinafter "CBA") §§ 16.1, 16.5(1). If a grievance is not promptly and satisfactorily resolved, either side may request arbitration within the next ten working days. CBA §§ 16.2, 16.5(2).

Fresh Seasons treats the date on which it issued its last payroll checks—May 9, 2014—as the date of the alleged violation. Under §§ 16.1 and 16.5, then, the Union was required to file a grievance no later than August 7, 2014, which was 90 calendar days after the violation. Thereafter, the Union had until August 21, 2014—ten working days after August 7—to demand arbitration. *See* CBA §§ 16.2, 16.5(2). According to Fresh

Seasons, then, the Union had until February 21, 2015—six months after the last day on which it could have made a timely request for arbitration—to bring this lawsuit.

As this brief summary demonstrates, Fresh Seasons' argument requires extensive interpretation of the CBA, including determinations regarding: (1) the nature of the alleged violation of the CBA; (2) the date on which that violation occurred; (3) whether the Union's grievance of that violation was timely; and (4) whether the Union's arbitration demand was timely.  But it is well established that these determinations must be made by an arbitrator, not a judge.[2]  That is the first reason why the Court rejects Fresh Seasons' position:  Restricting the general rule that an action to compel arbitration accrues after a demand for arbitration is refused to situations in which the demand for arbitration was timely would require judges to become deeply engaged in interpreting CBAs, and the Eighth Circuit has been clear that judicial interpretation of CBAs is to be avoided whenever possible.

The second reason why the Court rejects Fresh Seasons' position is that it is not compelled by any case law.  Fresh Seasons relies primarily on two Eighth Circuit

---

[2]*See Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Constr. Prods, Inc.*, 359 F.3d 954, 956-57 (8th Cir. 2004) (timeliness of union's demand for arbitration was for arbitrator); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001) (whether failure to submit timely arbitration demand resulted in waiver of right to arbitrate was for arbitrator; *Contracting Nw., Inc. v. City of Fredericksburg*, 713 F.2d 382, 386 (8th Cir. 1983) ("notice requirements with stated time limits are procedural objections which will be left to the arbitrator").

decisions: *Cook v. Columbian Chemicals Co.*, 997 F.2d 1239 (8th Cir. 1993), and *United Rubber, Cork, Linoleum, & Plastic Workers of America Local 164 v. Pirelli Armstrong Tire Corp.*, 104 F.3d 181 (8th Cir. 1997).  Both cases are easily distinguishable, however.

*Cook* was a so-called "hybrid" action—that is, a case in which an employee sued both his employer (for terminating his employment) and his union (for failing to demand arbitration of his grievance).  *Cook*, 997 F.2d at 1240.  The Eighth Circuit explained that, as a general matter, hybrid claims accrue when the union decides not to pursue the employee's grievance.  *Id.* at 1241.  When the union does not announce that it has decided not to demand arbitration of an employee's grievance—when, instead, the union simply allows the time to arbitrate the grievance to lapse—the employee's cause of action will be deemed to accrue on the last day on which the union could have demanded arbitration.  *Id.*

This is a sensible rule.  The wrong that the hybrid suit in *Cook* sought to remedy was the failure of a union to demand arbitration of a grievance.  The Eighth Circuit had to pick *some* date on which that wrong occurred.  Given that there was no discrete, identifiable decision by the union not to demand arbitration, the most logical date for the running of the statute of limitations was the last date on which the union could have avoided the wrong by demanding arbitration.  True, applying such a rule required judicial interpretation of a CBA, but there was simply no alternative.

Like this case, *United Rubber* was not a hybrid suit, but instead an action by a union to compel arbitration. *United Rubber*, 104 F.3d at 182. But unlike this case, the union in *United Rubber* never demanded arbitration. *Id.* at 185. Because the union never demanded arbitration, the employer never refused to arbitrate, and thus a *Cook* problem arose: The wrong that the lawsuit sought to remedy was the refusal of the employer to arbitrate. The Eighth Circuit had to pick some date on which that wrong occurred. But there was no discrete, identifiable decision by the employer to reject a demand for arbitration. Under the circumstances, the Eighth Circuit applied the *Cook* rule and held that the union's cause of action to compel arbitration accrued on the last day on which the union could have made a timely request for arbitration. *Id.* at 184. As the Eighth Circuit emphasized, however, it applied the *Cook* rule only because of the unusual circumstances of the case:

> Reference to the terms of the CBA and any potential agreements reached pursuant to those terms that might prolong the accrual of the cause of action was unavoidable because the record contains no clear demand for or refusal of arbitration from which to calculate the limitations period for this cause of action.

*Id.* at 185.

Obviously, there is a critical difference between *Cook* and *United Rubber*, on the one hand, and this case, on the other hand. In *Cook* and *United Rubber*, it was impossible for the Eighth Circuit to apply the general rule that an action to compel arbitration

-10-

accrues after a demand for arbitration is refused.  Because the unions in those cases never *demanded* arbitration, the employer never *refused* to arbitrate.  In this case, however, there is a "clear demand for [and] refusal of arbitration from which to calculate the limitations period," and "[r]eference to the terms of the CBA" is not "unavoidable."  In short, there is no reason why this Court should not apply the general rule that an action to compel arbitration accrues "when one party clearly articulates its refusal to arbitrate the dispute."  *Bass*, 232 F.3d at 618 (citation and quotations omitted).

Fresh Seasons points out that applying the general rule in cases in which the demand for arbitration was untimely can lead to absurd results.  For example, a union could demand arbitration 25 years after a grievance arises, and as long as the union files suit within six months of the employer's rejection of that demand, the union's action to compel arbitration will be deemed timely.  The short answer to this extremely unlikely scenario is that an employer who finds itself faced with such a lawsuit will have no choice but to litigate *somewhere* the question of the timeliness of the union's demand for arbitration.  The employer will have to litigate that question either before a judge or before an arbitrator.  Applying the general rule to such cases merely requires the employer to arbitrate the timeliness of the union's arbitration demand before an arbitrator rather than a judge.  The union's demand in Fresh Seasons' hypothetical

would indeed be absurd, but there is nothing absurd about requiring the employer to respond to that demand in the proper forum.

In short, the Court can find no basis in law or logic for refusing to apply the general rule that an action to compel arbitration under § 185 accrues after a demand for arbitration is refused. Fresh Seasons rejected the Union's demand for arbitration on June 24, 2015. Compl. Ex. L. The Union filed this action on October 21, 2015. ECF No. 1. This action is therefore timely.

### B. Arbitration

Fresh Seasons next argues that it cannot be compelled to arbitrate because it is not a party to the March 2014 CBA. The Court disagrees.

An employer is part of a multi-employer bargaining unit—and is bound by the agreements struck by that unit—as long as "the employer member has indicated from the outset an intention to be bound in collective bargaining by group rather than by individual action." *Kroger Co.*, 148 N.L.R.B. 569, 573 (1964). No specific formalities are required. *See Bellingham Auto. Dealers Ass'n*, 90 N.L.R.B. 374, 376 (1950) ("[N]either the lack of a formal association of employers nor the fact that the employers have not given their designated representatives final authority to bind them, precludes the establishment of a multiple-employer unit." (footnotes omitted)). Moreover, "[i]t is well settled that, once negotiations have begun on a contract, an employer may not

withdraw from a multi-employer bargaining unit absent consent of the union or unusual circumstances." *N.L.R.B. v. Custom Wood Specialties, Inc.*, 622 F.2d 381, 384 (8th Cir. 1980) (citation and quotations omitted).

There is no dispute that Fresh Seasons was part of the Retailers multi-employer bargaining unit and, as a result of its membership in that bargaining unit, Fresh Seasons was a party to several earlier CBAs.[3]  Wartman Aff. ¶¶ 6, 8.  Fresh Seasons does not contend that it withdrew from the Retailers before negotiations for the March 2014 CBA began, nor does it contend that unusual circumstances would have justified a withdrawal during the negotiations.  To the contrary, Fresh Seasons actively participated in the negotiations for the March 2014 CBA.  Under longstanding precedent, then, Fresh Seasons is bound by the March 2014 CBA.  *See Custom Wood Specialties, Inc.*, 622 F.2d at 383-86 (employer was bound by CBA even though bargaining unit had asked employer to withdraw during negotiations and employer thereafter did not participate in negotiations and refused to implement the new CBA).

Fresh Seasons nevertheless contends that the facts of this case indicate that Fresh Seasons had the right to reject a CBA entered into by the Retailers.  In particular, Fresh

---

[3]In his affidavit, Thomas Wartman asserts that "Fresh Seasons Markets never agreed to be bound by the terms of agreements reached between the Minneapolis Grocery Retailers and the Union.  Instead, Fresh Seasons Markets and the Union had their own separate agreement." Wartman Aff. ¶ 9.  At oral argument, however, Fresh Seasons clarified that it did not have its own separate CBAs with the Union, but rather was a party to the multi-employer CBAs.

Seasons points to the fact that it had previously engaged in individual negotiations with the Union and the fact that it refused to sign the March 2014 CBA despite multiple requests from the Union. Fresh Seasons also highlights language from the Retailers' January 2014 draft proposal stating that "[a]ny agreement as to a specific proposal is considered to be a tentative agreement subject to final agreement between each employer and the Union concerning all matters related to these negotiations." Wartman Aff. Ex. C.

These circumstances do not preclude Fresh Seasons from being bound by the March 2014 CBA. It is clear that individual employers can reach side agreements with a union without withdrawing from or destroying the existence of a multi-employer bargaining unit. *See Kroger Co.*, 148 N.L.R.B. at 572-73 (noting that it would be "patently unrealistic" to preclude members of a multi-employer unit from negotiating separately over limited matters of particular concern). It is also clear that, as long as an employer has manifested an intent to be bound by group action, the employer's later refusal to sign the CBA does not preclude the employer from being bound by that CBA. *See id.* at 570, 573-74 (employer was bound even though it repeatedly protested the inclusion of a pension plan during negotiations and refused to sign the resulting CBA); *cf. Twin City Pipe Trades Serv. Ass'n, Inc. v. Frank O'Laughlin Plumbing & Heating Co.*, 759 F.3d 881, 885 (8th Cir. 2014) ("a collective bargaining agreement is not dependent on the

reduction to writing of the parties' intention to be bound" (citation and quotations omitted)).

Finally, in the absence of a history of the parties permitting individual retailers to reject the collectively-bargained agreements reached by the Retailers and the Union, the Retailers' unilateral statement in their written proposal purporting to reserve the right for individual employers to reject the CBA does not rebut the Union's evidence that the Retailers negotiated as a unit.  *Cf. Sands Point Nursing Home*, 319 N.L.R.B. 390, 391 (1995) (noting a lack of evidence that the employer had ever unilaterally imposed its own terms and conditions); *Kroger Co.*, 148 N.L.R.B. at 574 ("We find this reservation to be nothing more than an exercise of the Employer's privilege, acquiesced in by the Union, to insist upon limited separate negotiations, which privilege, we have already stated, is consistent with the concept of multiemployer bargaining."); *Quality Limestone Prods., Inc.*, 143 N.L.R.B. 589, 590 (1963) (noting that while some witnesses claimed each company could accept or reject agreements reached by the unit, in practice no member had ever rejected an agreement); *Krist Grandis*, 121 N.L.R.B. 601, 609-10 (1958) (where employers have participated for a substantial period of time in joint bargaining and have adopted the resulting agreements, it is irrelevant that the employers have not given the unit the power to execute final and binding agreements on their behalf).

Fresh Seasons compares this case to *Hunts Point Recycling Corp.*, 301 N.L.R.B. 751 (1991), in which the National Labor Relations Board found insufficient evidence of a multi-employer bargaining unit. In *Hunts Point*, however, the Board found that there was virtually no evidence that the bargaining unit had ever *existed*. *Id.* at 752 (noting that aside from the conclusory testimony of a union official who was not sure of the unit's name, "the record contains no actual evidence regarding the identity, history, or status as a bargaining agent of such a group"). Here, by contrast, there is no dispute that the Retailers have existed as a bargaining unit for many years, nor is there any dispute that Fresh Seasons was a part of that bargaining unit, took part in negotiations, and was bound by past CBAs.

Fresh Seasons also cites several cases concerning withdrawal from a CBA. *See Frank O'Laughlin*, 759 F.3d at 882; *Heimerl v. Tech Elec. of Minn., Inc.*, 9 F. Supp. 3d 1002 (D. Minn. 2014); *Local 13 Int'l All. of Theatrical Stage Emps. v. SFX Target Ctr. Arena Mgmt., L.L.C.*, No. 01-1915, 2003 WL 172878 (D. Minn. Jan. 22, 2003). Unlike this case, however, these cases involve CBAs with evergreen clauses and termination provisions. *See Frank O'Laughlin*, 759 F.3d at 882; *Heimerl*, 9 F. Supp. 3d at 1007-09; *SFX Target Ctr.*, 2003 WL 172878, at *1. Such CBAs are governed by an entirely different legal framework. The question in this case is not whether Fresh Seasons properly exercised a right under a termination provision to withdraw from a CBA. Instead, the question in

-16-

this case is whether Fresh Seasons was a member of the Retailers bargaining unit when the Retailers reached agreement with the Union on the March 2014 CBA.  Because Fresh Seasons was a member of the bargaining unit at that time, Fresh Seasons is bound by that CBA and is subject to the CBA's arbitration provision.

For these reasons, the Union's motion to compel arbitration is granted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment [ECF No. 18] is DENIED.

2. Plaintiff's motion for summary judgment [ECF No. 24] is GRANTED.

3. Defendants are ORDERED to submit to arbitration in accordance with the terms of the March 2, 2014 collective bargaining agreement (Complaint Exhibit A).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  October 6, 2016   s/Patrick J. Schiltz  
Patrick J. Schiltz  
United States District Judge